UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VICTOR LORASO AND JANE LORASO          CIVIL ACTION


VERSUS                                 NO: 13-4734


JP MORGAN CHASE BANK, N.A.,            SECTION: J
ET AL


**ORDER AND REASONS**

Before the Court is a **Motion to Dismiss** pursuant to Federal
Rule of Civil Procedure 12(b)(6) **(Rec. Doc. 8)** brought by Defendant
JP Morgan Chase Bank ("Chase"), as well as Plaintiffs' Opposition
**(Rec. Doc. 11)** and Chase's Reply **(Rec. Doc. 16)**. Chase's motion was
submitted for hearing on the briefs on July 3, 2013.

Having considered the motion, the parties' submissions, the
record, and the applicable law, the Court finds, for reasons
expressed below, that Chase's **Motion to Dismiss** should be **GRANTED.**

**PROCEDURAL AND FACTUAL BACKGROUND**

For purposes of this 12(b)(6) motion, Plaintiffs' rendition of
the facts is as follows. Plaintiff Victor Loraso signed a
promissory note in 2008 in favor of Axion Mortgage Group, and the
loan was secured by a mortgage on Plaintiffs' home. (Pls.' Compl.,
Rec. Doc. 1-1, p. 2). Axion assigned, transferred, or sold the loan
and the mortgage to Chase, and Chase has acted as the loan
servicer. (Pls.' Compl., Rec. Doc. 1-1, p. 2). Since 2008,

1

Plaintiffs have repeatedly attempted to refinance the loan, obtain an equity loan with a second mortgage, obtain a forbearance, or obtain a loan modification. (Pls.' Compl., Rec. Doc. 1-1, p. 2). Plaintiff sent several qualified written requests ("QWRs") to Chase, requesting information on the loan and requesting a modification of the loan, but Chase failed to timely respond to those QWRs. (Pls.' Compl., Rec. Doc. 1-1, p. 2-3). Plaintiffs claim that Chase, in bad faith, refused to grant them a loan modification or refinance, an equity loan, a forbearance, or a line of credit. (Pls.' Compl., Rec. Doc. 1-1, p. 3). Plaintiffs also alleged that Chase "engaged in delaying tactics, repeatedly requesting information that had already been sent while Plaintiffs continued to struggle to pay the full monthly mortgage note." (Pls.' Compl., Rec. Doc. 1-1, p. 3). Plaintiffs contacted Chase several times to determine the amount of the total outstanding balance on the loan, but Chase failed to provide an accurate statement and continually increased the amount that Plaintiffs owed. (Pls.' Compl., Rec. Doc. 1-1, p. 3-4).

In 2010, Plaintiffs contacted Chase again to request a loan modification, but Chase told Plaintiffs that they were not qualified for a modification because the loan was not in default. (Pls.' Compl., Rec. Doc. 1-1, p. 4). As a result of that conversation, Plaintiffs allowed the loan to go into default in order to qualify for a loan modification and subsequently applied

for such a modification. (Pls.' Compl., Rec. Doc. 1-1, p. 4). Chase then refused to modify the loan and refused to accept partial payments of the loan balance due. (Pls.' Compl., Rec. Doc. 1-1, p. 4).

In October 2011, Plaintiffs applied for a mortgage modification, and Chase denied the application without offering Plaintiffs any of the reasonable options that were available, including the option of deferring only a certain percentage of the loan. (Pls.' Compl., Rec. Doc. 1-1, p. 4-5). In November 2011, Plaintiffs renewed their modification application in writing, and on December 12, 2011, Chase required Plaintiffs to resend financial information that Plaintiffs had already provided, which Plaintiffs claim was a "delaying tactic aimed at stalling the work-out process to give Chase the opportunity to foreclose." (Pls.' Compl., Rec. Doc. 1-1, p. 5). On that same date, December 12, 2011, Chase filed a Petition for Executory Process to foreclose on Plaintiffs' home. (Pls.' Compl., Rec. Doc. 1-1, p. 5). On December 13, 2011, Plaintiffs then requested in writing that Chase modify the loan and offered Chase an immediate payment of $40,000, but Chase did not respond to the request. (Pls.' Compl., Rec. Doc. 1-1, p. 5).

On February 2012, Plaintiffs began the process of providing additional information and documents that Chase had requested, and Plaintiffs again applied for a mortgage modification, but Chase continued to request additional documentation and to deny receiving

3

any of the documents that Plaintiffs had sent. (Pls.' Compl., Rec. Doc. 1-1, p. 6). In June 2012, Chase demanded $173,466.26 in cash to reinstate Plaintiff's loan, as well as six months of payments at double the rate of the original note, without an effort to reduce the interest rate based on Plaintiffs' requests for modification. (Pls.' Compl., Rec. Doc. 1-1, p. 6). Plaintiffs replied to Chase's demand by email, but Chase did not respond to their email and continued to claim that Plaintiffs had failed to send required financial information. (Pls.' Compl., Rec. Doc. 1-1, p. 7).

The Louisiana Attorney General sent a letter to Chase on Plaintiffs' behalf on January 7, 2013, seeking assistance with Plaintiffs' mortgage loan, but Chase denied receiving that letter until January 24, 2013. (Pls.' Compl., Rec. Doc. 1-1, p. 7). On February 14, 2013, Chase informed Plaintiffs that it needed "additional research time" to resolve Plaintiffs' requests. (Pls.' Compl., Rec. Doc. 1-1, p. 7). On February 20, 2013, Chase denied Plaintiffs' modification requests based on Plaintiffs' alleged failure to comply with Chase's requests to produce documents. (Pls.' Compl., Rec. Doc. 1-1, p. 7). Plaintiffs continued to provide additional information, and Chase then informed Plaintiffs that a refinancing or modification would not be available to them because the loan was in default, despite the fact that two years earlier, Chase had told Plaintiffs that their loan could only become eligible for a refinancing or modification if the loan *was*

4

in default. (Pls.' Compl., Rec. Doc. 1-1, p. 7-8). Plaintiffs claim that Chase "incited Plaintiffs to allow the mortgage to go into default" and then "refus[ed] to negotiate the loan modification it had enticed Plaintiffs to seek," all the while deliberately misleading Plaintiffs into believing that their loan qualified for a modification and using "delay tactics" to create an opportunity to foreclose. (Pls.' Compl., Rec. Doc. 1-1, p. 8-9).

As a result of these alleged occurrences, Plaintiffs have asserted the following theories of recovery against Chase: (1) breach of contract, bad faith breach of contract, and/or breach of the obligation of good faith performance under a contract, (2) negligence, (3) negligent or intentional misrepresentation and detrimental reliance, (4) breach of fiduciary duty, (5) wrongful foreclosure, (6) intentional interference with a contract or business relationship, (7) violations of the Real Estate Settlement Procedures Act (RESPA), and (8) violations of the Truth in Lending Act (TILA)/Regulation Z.[1] (Pls.' Compl., Rec. Doc. 1-1, p. 4, 9-11).

## PARTIES' ARGUMENTS

### A.  BREACH OF CONTRACT, BAD FAITH BREACH OF CONTRACT, BREACH OF THE OBLIGATION OF GOOD FAITH PERFORMANCE, NEGLIGENCE, INTENTIONAL AND NEGLIGENT MISREPRESENTATION, DETRIMENTAL RELIANCE, AND

---

[1] Plaintiffs also allege that Chase is vicariously liable for the acts and omissions of its employees. (Pls.' Compl., Rec. Doc. 1-1, p. 11).

**WRONGFUL DISCLOSURE**

Chase argues that each of these claims should be dismissed because they are barred by the Louisiana Credit Agreement Statute (LCAS). (Def.'s Mtn., Rec. Doc. 8-1, p. 5). Specifically, Chase contends that Plaintiffs have failed to meet their burden to allege that the parties ever entered into a written loan modification agreement. (Def.'s Mtn., Rec. Doc. 8-1, p. 5). According to Chase, "[t]he Louisiana Supreme Court has interpreted the Credit Agreement Statute to bar all claims against creditors that are not based on written credit agreements, regardless of the legal theory the debtor purports to assign to those claims." (Def.'s Mtn., Rec. Doc. 8-1, p. 6) (citing *Jesco Constr. Corp. v. NationsBank Corp.*, 2002-0057 (La. 10/25/02); 830 So. 2d 989, 990-92). Chase argues that Plaintiffs' suit is based on an allegation that Chase failed to grant Plaintiffs a loan modification, forbearance, or refinancing loan, and that "[s]uch an alleged agreement satisfies the definition of 'credit agreement' because it is an agreement to make a 'financial accommodation.'" (Def.'s Mtn., Rec. Doc. 8-1, p. 6-7). Chase further avers that this Court's decision in *Bass v. Chase Home Finance* supports its argument. (Def.'s Mtn., Rec. Doc. 8-1, p. 7).

Plaintiffs argue that the Louisiana Credit Agreement Statute only applies to oral agreements or representations made *prior* to the execution of a written loan document, and not to those made

6

*after* loan documents are executed, and Plaintiffs note that Chase's allegedly wrongful conduct occurred *after* the mortgage agreement was executed. (Pls.' Opp., Rec. Doc. 11, p. 9). Plaintiffs point out that the most recent decision regarding whether the LCAS precludes *all* actions against banks not based on written loan documents is *St. Landry Homestead v. Vidrine*, a Louisiana Third Circuit case, which Plaintiffs contend supports their argument. (Pls.' Opp., Rec. Doc. 11, p. 10-11). Plaintiffs also argue that the Louisiana Fourth Circuit has issued a similar ruling in *BizCapital Business v. Union Planters*. (Pls.' Opp., Rec. Doc. 11, p. 12-13). Chase counters that the *Vidrine* case actually weighs in its favor. (Def.'s Reply, Rec. Doc. 16, p. 6).

## B.  BREACH OF FIDUCIARY DUTY

With regard to the breach of fiduciary duty claim, Chase and Plaintiffs make the same arguments regarding the LCAS discussed above. Additionally, Chase argues that Plaintiffs have failed to assert a claim for breach of fiduciary duty because their compliant fails to allege: (1) a special relationship of trust and confidence, and (2) an advantage that Chase had over them. (Def.'s Mtn., Rec. Doc. 8-1, p. 8). Chase further contends that under La. R.S. § 6:1124, financial institutions do not have a fiduciary duty to their customers unless there is a written agreement stating that the financial institution will act as a fiduciary. (Def.'s Mtn., Rec. Doc. 8-1, p. 8). Chase also points out that the Courts in the

7

Eastern District of Louisiana have routinely dismissed breach of fiduciary claims against financial institutions where the plaintiff fails to allege the existence of a written fiduciary agreement. (Def.'s Mtn., Rec. Doc. 8-1, p. 8).

Plaintiffs' Opposition does not appear to address Chase's argument that Plaintiffs have failed to allege a special relationship and an advantage that Chase had over them. With respect to Chase's argument regarding written fiduciary agreements, Plaintiffs argue that, despite the absence of a written fiduciary agreement, "[i]n agreeing to service the loan, to receive payments and to act as a liaison with Plaintiffs as borrowers, on information and belief, Chase agreed with the mortgage holders to act in the capacity of a fiduciary." (Pls.' Opp., Rec. Doc. 11, p. 13).

## C. INTENTIONAL INTERFERENCE WITH A CONTRACT OR BUSINESS RELATIONSHIP

With regard to the claim for intentional interference with a contract or business relationship, the parties make the same arguments regarding the LCAS discussed above. Additionally, Chase argues that Plaintiffs have failed to state a claim upon which relief can be granted because, under the case law, such a claim applies only to the narrow circumstances where a corporate officer interferes with his employer's corporate contract with third persons. (Def.'s Mtn., Rec. Doc. 8-1, p. 9-12). Chase claims that

8

because Plaintiffs have not alleged facts that fit into those narrow circumstances, Plaintiffs have failed to state a claim for intentional interference with contract or a business relationship. (Def.'s Mtn., Rec. Doc. 8-1, p. 12). Plaintiffs aver that this cause of action has been expanded beyond those narrow circumstances, and that this cause of action has been recognized in the area of lender-borrower relations. (Pls.' Opp., Rec. Doc. 11, p. 16-17). Additionally, Plaintiffs argue that the *Vidrine* court "recognized the Vidrines' cause of action for tortious interference with a business relationship," and thus that this Court should recognize Plaintiffs' claim. (Pls.' Opp., Rec. Doc. 11, p. 11). Chase counters that the *Vidrine* facts are distinguishable from the facts of the instant case. (Def.'s Reply, Rec. Doc. 16, p. 6, n.23).

### D.   TRUTH IN LENDING ACT (TILA) CLAIM

Chase argues that any potential TILA claim is time barred because it has not been brought within one year of the date of the alleged violation. (Def.'s Mtn., Rec. Doc. 8-1, p. 13). Chase points out that the alleged TILA violations occurred in 2009 and 2010, and Plaintiffs did not file suit until 2013. (Def.'s Mtn., Rec. Doc. 8-1, p. 13). Plaintiffs' Opposition states: "Plaintiffs withdraw their TILA claim." (Pls.' Opp., Rec. Doc. 11, p. 17). Chase contends that any arguments not raised in an opposition to a motion to dismiss are waived, and so Plaintiffs' TILA claim should

be dismissed with prejudice. (Def.'s Reply, Rec. Doc. 16, p. 1-2).

   **E.  REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA) CLAIM**

   Chase argues that Plaintiffs have not alleged that their mortgage is a federally related mortgage, and thus that Plaintiffs have failed to trigger a RESPA claim. (Def.'s Mtn., Rec. Doc. 8-1, p. 15). Plaintiffs point out that Chase has not argued that the mortgage is not, in fact, a federally related mortgage, but only that Plaintiffs have not alleged that it is. (Pls.' Opp., Rec. Doc. 11, p. 17). Plaintiffs claim that the mortgage is indeed federally related, that federal pleadings are notice pleadings, and that Chase has been adequately put on notice of the claims made against it. (Pls.' Opp., Rec. Doc. 11, p. 17-19).

   Additionally, Chase contends that Plaintiffs have failed to state a claim for relief under RESPA because Plaintiffs have failed to allege any facts showing that Chase failed to respond to a qualified written request ("QWR"). (Def.'s Mtn., Rec. Doc. 8-1, p. 15). According to Chase, correspondence relating to a loan modification is not a QWR. (Def.'s Mtn., Rec. Doc. 8-1, p. 15). Plaintiff counters that its correspondence with Chase involved not only the option of a loan modification, but also a loan reinstatement and other options. (Pls.' Opp., Rec. Doc. 11, p. 19-20). Additionally, Plaintiffs argue that a request for a loan modification actually does constitute a QWR. (Pls.' Opp., Rec. Doc. 11, p. 20).

10

Chase also avers that Plaintiffs must allege actual damages as a result of Chase's failure to respond to purported QWRs in order to adequately assert a cause of action under RESPA, and that Plaintiffs have failed to allege these actual damages. (Def.'s Mtn., Rec. Doc. 8-1, p. 16). Plaintiffs argue that their complaint clearly states that their credit score was damaged and that they suffered loss of business income as a result of Chase's actions, which prevented them from securing financing from Chase or elsewhere. (Pls.' Opp., Rec. Doc. 11, p. 21). Chase counters that Plaintiffs are required to allege "that they incurred actual damages as a direct result of a failure to respond to a QWR" and that Plaintiffs' citation to their general list of damages is insufficient to meet this requirement. (Def.'s Reply, Rec. Doc. 16, p. 4). Chase claims:

> In fact, a review of ¶ XXVIII of the [complaint] shows that the Plaintiffs are seeking damages because they were not given a loan modification, not because Chase allegedly failed to respond to purported QWRs. ... Indeed, it is hard to fathom how the Plaintiffs could have incurred actual damage under RESPA for Chase's alleged failure to respond to purported QWRs issued after the denial of a loan modification, after the default on the mortgage, and after the December 12, 2011 filing of

11

Chase's petition for executory process.

(Def.'s Reply, Rec. Doc. 16, p. 4-5, n.19).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal where a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all well-pled facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  The Court is not bound, however, to accept as true legal conclusions couched as factual allegations.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

In order to be deemed legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.  *Id.*  The complaint must contain enough factual

12

allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 255-57. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, however, the claim must be dismissed. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Twombly*, 550 U.S. at 555; *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

## DISCUSSION

**A.  BREACH OF CONTRACT, BAD FAITH BREACH OF CONTRACT, BREACH OF THE OBLIGATION OF GOOD FAITH PERFORMANCE, NEGLIGENCE, INTENTIONAL AND NEGLIGENT MISREPRESENTATION, DETRIMENTAL RELIANCE, WRONGFUL DISCLOSURE, BREACH OF FIDUCIARY DUTY, AND INTENTIONAL INTERFERENCE WITH A CONTRACT OR BUSINESS RELATIONSHIP**

**1.  DOES CHASE'S ALLEGED FAILURE TO GRANT A LOAN MODIFICATION, FORBEARANCE, OR REFINANCING LOAN CONSTITUTE A CREDIT AGREEMENT UNDER THE LOUISIANA CREDIT AGREEMENT STATUTE?[2]**

---

[2] The LCAS states, in pertinent part: "A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." LA. REV. STAT. ANN. § 6:1122 (2012). The statute also provides:

> A. The following actions shall not give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements of R.S. 6:1122:
> (1) The rendering of financial or other advice by a creditor to a debtor.
> (2) The consultation by a creditor with a debtor.

Under the LCAS, a credit agreement is defined as "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation." LA. REV. STAT. ANN. § 6:1121 (2012). Chase claims that Plaintiffs' suit is based on an allegation that Chase failed to grant Plaintiffs a loan modification, forbearance, or refinancing loan, and that "[s]uch an alleged agreement satisfies the definition of 'credit agreement' because it is an agreement to make a 'financial accommodation.'" (Def.'s Mtn., Rec. Doc. 8-1, p. 6-7). In *King*, the plaintiff alleged that an officer of the bank "assured him that the loan consolidation and restructuring would not impair or jeopardize [his] financial and personal welfare as long as he remained current in all his obligations with the bank." *King v. Parish Nat'l Bank*, 2004-0337, p. 2-3 (La. 10/19/04); 885 So. 2d 540, 534. The Supreme Court of Louisiana found that the bank officer's oral promise was an agreement to make a financial accommodation, and thus was a credit agreement that would have to be in writing to be enforceable. *Id.* at 548. This Court agrees with Chase that the instant case involves a similar alleged oral promise, though this promise was to modify, forbear, or refinance a loan, which

---

(3) The agreement of a creditor to take or not to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under a prior credit agreement, or extending installments due under a prior credit agreement.
B. A credit agreement shall not be implied from the relationship, fiduciary, or otherwise, of the creditor and the debtor.

LA. REV. STAT. ANN. § 6:1123 (2012).

14

constitutes a credit agreement that would have to be in writing to be enforceable under the LCAS.

**2.   DOES THE LOUISIANA CREDIT AGREEMENT STATUTE BAR *ALL* OF PLAINTIFFS' CLAIMS, OR ONLY THOSE CLAIMS BASED ON ORAL REPRESENTATIONS MADE BEFORE OR ALONG WITH WRITTEN AGREEMENTS?**

In 2002, the United States Fifth Circuit certified a question to the Supreme Court of Louisiana, and the Supreme Court answered that "[t]he Louisiana Credit Agreement Statute precludes all actions for damages arising from oral credit agreements, regardless of the legal theory of recovery asserted." *Jesco Constr. Corp. v. Nationsbank Corp.*, 830 So. 2d at 992.[3] The Supreme Court of Louisiana has also found that the LCAS "precludes all claims, *including bad faith breach and bad faith acts*, when predicated on the existence and enforceability of oral credit agreements and implied agreements based on the creditor's and debtor's previous relationship." *King*, 885 So. 2d at 542 (emphasis added).[4]

In *BizCapital*, the Louisiana Fourth Circuit stated that "the

---

[3] The *Jesco* plaintiff's claims, based on the bank's failure to grant his loan application, were all dismissed, including his claims for breach of contract, detrimental reliance, negligent misrepresentation, unfair trade practices, breach of duty of good faith and fair dealing, promissory and equitable estoppel, and breach of fiduciary duty. *Jesco Constr. Corp. v. Nationsbank Corp.*, 107 F. Supp. 2d 715, 725 (E.D. La. 2000) (Porteous, J.); *Jesco Constr. Corp. v. Nationsbank Corp.*, 321 F.3d 501, 502-03 (5th Cir. 2003).

[4] The *King* court also found that the Louisiana Credit Agreement Statute bars claims based on oral credit agreements against the employees of a creditor when those employees are acting within the course and scope of their employment. *King*, 885 So. 2d at 542. Therefore, Plaintiffs cannot succeed in their claim that Chase is vicariously liable for the acts and omissions of its employees will must fail.

legislature did not intend to totally immunize banks from all legal duties in their relationship with customers and third parties," and found that the LCAS does not bar negligent misrepresentation and detrimental reliance claims brought by one lender against another lender. *BizCapital Bus. & Indus. Dev. Corp. v. Union Planters Corp.*, 2003-2208, p. 5-6 (La. App. 4 Cir. 9/8/04); 884 So. 2d 623, 627. Although Plaintiffs argue that *BizCapital* weighs in their favor, this Court has pointed out, in *Bass v. Chase Home Finance*, that *BizCapital* involved a claim between two financial institutions and thus that *BizCapital* has no application to cases such as the instant case, where debtors sue banks on oral agreements to modify loans. *See Bass v. Chase Home Fin., L.L.C.*, No. 09-3339, 2010 WL 3922709, at *4-5 (E.D. La. Oct. 1, 2010) (Vance, J.). This Court will apply the law as interpreted by the Supreme Court of Louisiana, which has clearly stated that the LCAS precludes *all* actions for damages arising from oral credit agreements, including claims based on bad faith breach and bad faith acts, regardless of the particular legal theory the plaintiff chooses to assert. The exception potentially supplied by *BizCapital* is narrow and has no application here, where Plaintiffs are debtors who have sued Chase based on Chase's alleged oral agreement to modify their loan.

Plaintiffs also argue that *Vidrine*, a June 2013 decision by the Louisiana Third Circuit, weighs in their favor because the *Vidrine* court did "not interpret the supreme court's decisions in

... *Jesco* and *King* to establish a rule of law that the Louisiana Credit Agreement Act renders a financial institution immune from any and all liability arising from its business operations, including business operations that occur outside of the parameters of a credit agreement as defined in La. R.S. 6:1121(1)." (Pls.' Opp., Rec. Doc. 11, p. 9) (citing *St. Landry Homestead Fed. Sav. Bank v. Vidrine*, p. 21 (La. App. 3 Cir. 6/12/13); 118 So.3d 470, 486). Here, however, Plaintiffs' argument fails because Plaintiffs have not alleged that Chase's conduct occurred outside of the parameters of a credit agreement. As explained above, any alleged oral agreement by Chase to engage in a modification, forbearance, or refinancing of Plaintiffs' loan was a credit agreement. For these reasons, Plaintiffs' claims for breach of contract, bad faith breach of contract, breach of the obligation of good faith performance, negligence, intentional and negligent misrepresentation, detrimental reliance, wrongful foreclosure, breach of fiduciary duty,[5] and intentional interference with a

---

[5] Plaintiffs' claim for breach of fiduciary duty is barred under the LCAS, but it also fails for additional reasons. LA. REV. STAT. ANN. § 6:1124 states:

> No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary ... unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary.

LA. REV. STAT. ANN. § 6:1124 (2012). This Court has frequently held that where a plaintiff fails to allege the existence of a written fiduciary agreement in an action for breach of fiduciary duty against a financial institution, the plaintiff's claim must be dismissed in accordance with LA. REV. STAT. ANN. § 6:1124. *Crumes v. Gen. Ins. Co. of Am.*, No. 06-6890, 2007 WL 4257067, at *3 (E.D. La. Nov. 30, 2007) (Barbier, J.); *Obioha v. Proctor Fin. Ins. Co.*, No.

contract or business relationship[6] must be all be dismissed with prejudice.[7]

## B.   TRUTH IN LENDING ACT (TILA) CLAIM

A TILA claim must be brought "within one year from the date of the occurrence of the violation ... ." 15 U.S.C. § 1640 (2010). Plaintiffs' complaint alleges that the TILA violations occurred in 2009 and 2010, and Plaintiff did not file suit until May 3, 2013. Plaintiffs' TILA claim is thus time barred and must be dismissed with prejudice.

## C.   REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA) CLAIM

### 1.   IS THE MORTGAGE FEDERALLY RELATED?

According to the Southern District of Mississippi in 2010:

The Fifth Circuit has not yet addressed this issue, but courts in other jurisdictions have held that a plaintiff

---

06-9231, 2007 WL 2903227, at *3 (E.D. La. Oct. 2, 2007) (Vance, J.); *Clarkston v. Allstate Ins. Co.*, No. 06-4474, 2007 WL 128806, at *2 (E.D. La. Jan. 16, 2007) (Feldman, J.).

Here, in addition to the fact that Plaintiffs' claim for breach of fiduciary duty is barred under the LCAS, Plaintiffs merely argue that Chase had some sort of implied agreement to act as a fiduciary, despite the absence of a written fiduciary agreement. (Pls.' Opp., Rec. Doc. 11, p. 13-15). Plaintiffs' failure to allege a written fiduciary agreement is fatal to their claim for breach of fiduciary duty.

[6] Because Plaintiffs' claim for intentional interference with a contract or business relationship is barred under the LCAS, it is unnecessary for the Court to discuss the parties' additional arguments pertaining to this claim.

[7] Any claim by Plaintiffs that Chase is vicariously liable for the acts and omissions of its employees with respect to any of these causes of action must also be dismissed.

who does not specifically allege that his mortgage loan
was a 'federally related mortgage loan' in his complaint
does not have standing to assert a RESPA claim, and thus
such claims must be dismissed.

*Middleton v. Ameriquest Mortg. Co.*, No. 10-146, 2010 WL 2653293, at
*4 (S.D. Miss. June 24, 2010) (citing *Gardner v. First Amer. Title
Ins. Co.*, 294 F.3d 991, 993 (8th Cir. 2002)). In *Middleton*, the
plaintiff failed to allege a federally related mortgage, but the
court granted the plaintiff leave to file an amended complaint to
allege the existence of such a mortgage. *Id.*

Chase is correct that Plaintiffs' complaint does not
specifically allege that the mortgage in question is federally-
related. However, the Court will grant Plaintiffs leave to amend
their complaint to specifically allege that the mortgage is a
federally-related mortgage.

## 2. HAVE PLAINTIFFS ALLEGED A FAILURE TO RESPOND TO A QUALIFIED WRITTEN REQUEST (QWR)?

Chase argues that Plaintiffs have failed to state a claim
under RESPA  because they have not sufficiently alleged that their
communications, to which Chase allegedly failed to respond, were
QWRs.[8] (Def.'s Mtn., Rec. Doc. 8-1, p. 15). For a communication to

---

[8] If Plaintiffs sufficiently allege the existence of a QWR, Chase would
have certain statutory duties under Section 2605(e) of RESPA, which provides,
in pertinent part:

qualify as a QWR, it must relate to the servicing of a loan.[9] There
is support among the courts in the Fifth Circuit for Chase's
contention that a loan modification request does not constitute a
QWR because it does not dispute or request information about how a
loan is being serviced. *See Shatteen v. JP Morgan Chase Bank, N.A.*,
No. 10-107, 2010 WL 4342073, at *8 (E.D. Tex. Sept. 10, 2010); *Hill
v. Wells Fargo Bank, N.A.*, No. 12-11, 2012 WL 2065377, at *5-6
(S.D. Tex. June 6, 2012); *Fashina v. Fed. Home Loan Mortg. Corp.*,
No. 12-822, 2012 WL 6772058, at *4 (N.D. Tex. Dec. 11, 2012).

---

If any servicer of a federally related mortgage loan receives a
qualified written request from the borrower (or an agent of the
borrower) *for information relating to the servicing of such loan*,
the servicer shall provide a written response acknowledging
receipt of the correspondence within 5 days ... unless the action
requested is taken within such period. ... For purposes of this
subsection, a qualified written request shall be a written
correspondence, other than notice on a payment coupon or other
payment medium supplied by the servicer, that: (I) includes, or
otherwise enables the servicer to identify, the name and account
of the borrower; and (ii) includes a statement of the reasons for
the belief of the borrower, to the extent applicable, that the
account is in error or provides sufficient detail to the servicer
regarding other information sought by the borrower.

12 U.S.C.A. § 2605(e) (2013) (emphasis added).

Additionally, not later than thirty days after receipt of a qualified written
request, the servicer must make any appropriate corrections on the account,
conduct an investigation, and provide a written explanation or clarification
to the borrower. *Id.*

    [9] The term "servicing" refers to:

receiving any scheduled periodic payments from a borrower pursuant
to the terms of any mortgage loan ... and making the payments to
the owner of the loan or other third parties of principal and
interest and such other payments with respect to the amounts
received from the borrower as may be required pursuant to the
terms of the mortgage servicing loan documents or servicing
contract.

24 C.F.R. § 3500.2 (2013).

However, Plaintiffs' complaint does not merely allege that Plaintiffs sent requests for loan modifications; Plaintiffs' complaint also alleges that Plaintiffs offered to pay Chase an immediate payment of $40,000 but that Chase did not timely respond. (Pls.' Compl., Rec. Doc. 1-1, p. 5, ¶ XXVI). Plaintiffs further allege that they contacted Chase several times to determine the amount of the total outstanding balance on the loan, but Chase either failed to respond or failed to provide an accurate statement and continually increased the amount that Plaintiffs owed. (Pls.' Compl., Rec. Doc. 1-1, p. 3-4). Additionally, Plaintiffs' complaint alleges that Plaintiffs emailed Chase to contest Chase's demand for certain periodic monthly payments that Plaintiffs believed to be excessive and incorrect, and that Chase did not timely respond. (Pls.' Compl., Rec. Doc. 1-1, p.6-7, ¶ XXX-XXXV). These alleged requests may not have pertained to loan modifications but may instead have pertained to the disputed amount of the scheduled periodic payments and the total outstanding balance. Therefore, the Court will grant Plaintiffs leave to amend their complaint to allege that these written requests were, in fact, related to the servicing of the loan, as defined by 12 U.S.C.A. § 2605(e) and 24 C.F.R. § 3500.2, and thus that they were QWRs.

**3. HAVE PLAINTIFFS ALLEGED ACTUAL DAMAGES AS A RESULT OF CHASE'S ALLEGED RESPA VIOLATIONS?**

Damages under RESPA include "... any actual damages to the

21

borrower as a result of the failure" to comply with RESPA. 12 U.S.C. § 2605(f)(1) (2013). Chase claims that Plaintiffs have failed to specifically allege that their damages were caused by Chase's failure to respond to their alleged QWRs and have instead alleged that their damages were caused by Chase's refusal to grant them a loan modification. (Def.'s Reply, Rec. Doc. 16, p. 4-5, n.19). In Plaintiffs' Opposition, they argue that their complaint alleges that their credit score was damaged, which prevented them from securing financing at Chase or elsewhere, as a result of Chase's failure to respond to their QWRs. (Pls.' Opp., Rec. Doc. 11, p. 21). It is unclear from Plaintiffs' complaint whether those alleged damages resulted from Chase's failure to modify the loan or from Chase's failure to timely respond to QWRs. Therefore, this Court will grant Plaintiffs leave to amend their complaint to specifically allege which damages resulted from Chase's failure to respond to QWRs. In sum, to state a cause of action for a violation of RESPA, Plaintiffs must amend their complaint to specifically allege: (1) that the mortgage in question is federally-related, (2) that Plaintiffs' written requests were related to the servicing of the loan and were thus QWRs, and (3) that Plaintiffs' damages resulted from Chase's alleged failure to respond to the QWRs.

**CONCLUSION**

Accordingly,

**IT IS ORDERED** that Chase's **Motion to Dismiss** pursuant to

Federal Rule of Civil Procedure 12(b)(6) **(Rec. Doc. 8)** is **GRANTED.**

    **IT IS FURTHER ORDERED** that Plaintiffs' claims for breach of contract, bad faith breach of contract, breach of the obligation of good faith performance, negligence, negligent and intentional misrepresentation, detrimental reliance, breach of fiduciary duty, wrongful disclosure, intentional interference with a contract or business relationship, violations of TILA/Regulation Z, and any accompanying vicarious liability theories are **DISMISSED WITH PREJUDICE.**

    **IT IS FURTHER ORDERED** that Plaintiffs' RESPA claim is **DISMISSED WITHOUT PREJUDICE.** Plaintiffs shall file an amended complaint within **twenty-one (21) days**, lest Plaintiffs' RESPA claim be dismissed with prejudice.

    New Orleans, Louisiana this 23rd day of October, 2013.


_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE